UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**MICHAEL EZELL (#343050)**                                    CIVIL ACTION

**VERSUS**

**MAJOR JOSEPH HOOKER, ET AL.**                                NO. 09-0180-JVP-CN

<u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in chambers in Baton Rouge, Louisiana, September 9, 2010.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MICHAEL EZELL (#343050)                                        CIVIL ACTION

VERSUS

MAJOR JOSEPH HOOKER, ET AL.                                    NO. 09-0180-JVP-CN

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motion for Partial Summary Judgment, rec.doc.no. 19. This motion is not opposed.

The pro se plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Major Joseph Hooker, Lt. Gabriel Hebert (identified in the plaintiff's Complaint as "Lt. Herbert"), Social Worker Katy Ard, and Cadet Franklin, alleging that the defendants violated his constitutional rights on November 6, 2008, by subjecting him to excessive force, by exhibiting deliberate indifference to his serious medical needs, and by destroying and/or confiscating his legal and personal property on that date.[1]

The defendants move for summary judgment relying upon the pleadings, a Statement of Uncontested Facts, pertinent excerpts from the plaintiff's

---

[1] Attempts by the United States Marshal's Office to serve defendants Katy Ard and Cadet Franklin have proven unsuccessful because service of process has not been accepted on behalf of these defendants by the Louisiana Department of Public Safety and Corrections. Specifically, a representative of the Department has asserted that there is no record of a "Katy Ard" employed at LSP, and as for Cadet Franklin, the Department "need[s] a first name" in order to identify this person and accept service on his behalf. See rec.doc.no. 6. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the failure of a plaintiff to serve a defendant within 120 days of commencement of an action is cause for dismissal of that defendant from the proceedings. It is appropriate, therefore, that the plaintiff's claims asserted against defendants Katy Ard and Cadet Franklin be dismissed, without prejudice, for failure of the plaintiff to timely effect service upon these defendants.

medical records, pertinent excerpts from the plaintiff's administrative remedy proceedings, and the affidavits of defendants Joseph Hooker and Gabriel Hebert.[2]

Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. Supporting affidavits must set forth facts which would be admissible in evidence. Opposing responses must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Federal Rules of Civil Procedure.

The plaintiff alleges in his Complaint that on the morning of November 6, 2008, he asked defendant Hooker for a clean jumpsuit, but the defendant responded by subjecting the plaintiff to verbal abuse. Several minutes later, defendant Hooker returned with defendant Hebert, and both defendants then sprayed full cans of irritant spray into the plaintiff's face. Defendants Hooker and Hebert then called for a cell-entry team based on their false assertion that the plaintiff was refusing to come to the bars of his cell to be restrained. While waiting for the cell-entry team, the plaintiff requested assistance from a social worker, Katy Ard, but she flatly refused to help him. When the cell-entry team arrived, approximately 45 minutes later, the plaintiff cooperated in allowing himself to be restrained. He asserts that he was then escorted to the shower area by defendant Hooker and was ordered to get on his knees, at which time defendant Hooker "hit" the plaintiff with an

---

[2] Although the exhibits attached to the defendants' Motion for Summary Judgment have not been independently certified as true and correct copies, all of these exhibits are excerpts from the plaintiff's administrative remedy proceedings and medical records which were previously filed into the record of this proceeding and which were certified at that time, pursuant to the affidavits of Paralegal Rhonda Z. Weldon and Nurse Kelley Hawkins, as being "true and exact copies" of the original documents maintained in the normal course of business by the Department of Public Safety and Corrections. See rec.doc.no. 11.

electric shield. The plaintiff was then given a clean jumpsuit, but when he requested a shower to wash off the irritant spray, defendant Hooker refused the plaintiff's request. The plaintiff was then escorted to a "suicide cell" by defendant Hooker. When the plaintiff requested that he be provided with his legal work, his prescribed eye drops and his toothbrush, defendant Hooker refused. Instead, the defendant again sprayed irritant spray into the plaintiff's face. When the plaintiff later requested medical assistance for his blurred vision, he was informed by Cadet Franklin and Cadet Floyd that defendant Hooker had given orders that the plaintiff was not to be provided with such assistance. Later in the day, when mail was being distributed by Cadet Franklin, defendant Hooker again approached the plaintiff, opened the plaintiff's mail, directed Cadet Franklin to tear up a photograph of the plaintiff's daughter that was enclosed in the envelope, and also threatened to harm the plaintiff's daughter, specifically to sexually assault her. It was not until later in the day, when the shift changed, that the plaintiff was allowed to shower and to return to his cell. When he entered his cell, however, he discovered that all of his legal work and his eye drops were missing.

In countervailing response to the plaintiff's allegations, the defendants have provided evidence to refute the plaintiff's allegations. Specifically, the defendants have provided affidavits and medical records which reflect that on the morning of November 6, 2008, defendant Hooker was making rounds and observed the plaintiff with a cup containing a white substance. When the defendant requested to know what the substance was, the plaintiff refused to respond and instead cursed the defendant. The defendant then gave the plaintiff several direct orders to come to the bars of his cell to be restrained, but the plaintiff refused. The defendant then retrieved a can of irritant spray, again gave the

plaintiff several direct orders to come to the bars and, when the plaintiff again refused, the defendant administered a one-second burst of irritant spray into the plaintiff's cell. Several minutes later, this sequence was repeated, and when the plaintiff continued to refuse direct orders to come to the bars, the defendant again administered a one-second burst of irritant spray into the plaintiff's cell. Upon the plaintiff's continued refusal to come to the bars, defendant Hooker called for a cell-entry team. When the cell-entry team arrived, the plaintiff finally cooperated and allowed himself to be restrained. He was then escorted to the shower area where he was provided with a clean jumpsuit, but he refused an offer of a shower. Medical personnel were contacted, and there is a written medical record reflecting that the plaintiff was seen by a health care provider at approximately 1:50 p.m. on that date. In his sworn statement, defendant Hooker specifically denies hitting the plaintiff with an electronic shield or utilizing any force against the plaintiff other than the two brief bursts of chemical spray that were believed necessary to obtain compliance from the plaintiff, who was repeatedly disobeying orders to come to the bars of his cell. Further, defendant Hebert has provided an affidavit attesting that he was not even present on the plaintiff's tier on November 6, 2008, during the incidents complained of by the plaintiff, and has no knowledge whatever regarding the plaintiff's claims.

In the instant motion, the defendants first seek dismissal of the plaintiff's claim for monetary damages asserted against them in their official capacities. Although the defendants correctly point out that the plaintiff's Complaint is unclear as to whether he has named the defendants in their individual and/or their official capacities, in light of the liberality accorded to the pleadings of pro se petitioners, Haines

v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), this Court interprets the plaintiff's allegations as asserting claims against the defendants in both capacities. Notwithstanding, § 1983 does not provide a federal forum for a litigant who seeks recovery of monetary damages against either a State or its officials acting in their official capacities, which officials are not seen to be "persons" under § 1983. Will v. Michigan Department of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Thus, it is clear that the plaintiff fails to state a claim for monetary damages under § 1983 against the defendants in their official capacities and that the defendants' motion should be granted in this respect.[3]

Turning to the plaintiff's claims asserted against the defendants in their individual capacities, it appears initially that the plaintiff's claim regarding verbal abuse and threats of harm made by defendant Hooker against both the plaintiff and the plaintiff's daughter are not properly before the Court. The law is clear in this regard that allegations of verbal abuse alone do not present claims under § 1983. "Mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation." McFadden v. Lucas, 713 F.2d 143 (5th

---

[3] In contrast, a suit against a state official in his individual or personal capacity, seeking to impose _individual_ liability upon a government official for actions taken by the official under color of state law, is not treated as a suit against the state. Hafer v. Melo, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Thus, a showing by the plaintiff that a defendant state official, acting individually and under color of state law, has intentionally caused the deprivation of the plaintiff's federal rights, is enough to establish personal liability in a § 1983 lawsuit. Id. Further, a state official in his or her official capacity, when sued for injunctive relief, is not a prohibited defendant because official capacity actions for prospective relief are not treated as actions against the State. Will v. Michigan Department of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45 (1989). See also 15 Am.Jur.2d Civil Rights § 101.

Cir.), cert. denied, 464 U.S. 998, 104 S.Ct. 499, 78 L.Ed.2d 691 (1983); Burnette v. Phelps, 621 F.Supp. 1157 (M.D. La. 1985); Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2nd Cir. 1973). Accordingly the plaintiff's assertion that defendant Hooker subjected the plaintiff to verbal abuse, threatened to subject the plaintiff to a cell-entry team, and threatened to subject the plaintiff's daughter to a sexual assault are insufficient to state a claim of constitutional dimension.

Turning next to the plaintiff's assertion that defendant Hooker refused the plaintiff's request to have his legal materials, toothbrush and eye drops while confined in the "suicide cell" on November 6, 2008, that the defendant participated in destroying the plaintiff's photograph of his daughter on that date, and also confiscated or destroyed the plaintiff's legal work and eye drops which were located in the plaintiff's cell, this claim also fails to rise to the level of a constitutional violation. Under well-established federal jurisprudence, an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available. Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 383 (1984); Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).[4] The burden is on the complainant to show that the remedy is not adequate. Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir. 1984). The plaintiff in the instant case has not alleged, nor is there any evidence, that state post-

---

[4] The underlying rationale of Parratt and Hudson is that when deprivations of property are effected through either negligent or intentional conduct on the part of a state employee, pre-deprivation procedures are simply "impracticable" since the state cannot know when such deprivations will occur. Hudson v. Palmer, supra.

deprivation remedies are unavailable or inadequate. To the contrary, Louisiana has ample remedies under which the plaintiff could have proceeded against the defendants for recovery of his property or for reimbursement for its loss. Marshall v. Norwood, 741 F.2d 761 (5th Cir. 1984).

Further, to the extent that the plaintiff's claim regarding the taking of his legal materials may be interpreted as asserting a claim of denial of access to the courts, this claim seeks to invoke the provisions of the First Amendment to the United States Constitution. In this regard, however, in order for the plaintiff to state a violation of his constitutional right to meaningful access to the courts, he must allege that he has suffered some cognizable legal prejudice or detriment as a result of the challenged conduct. Crowder v. Sinyard, 884 F.2d 804 (5th Cir. 1989), cert. denied, 496 U.S. 924, 110 S.Ct. 2617, 110 L.Ed.2d 638 (1990), citing Howland v. Kilquist, 833 F.2d 639 (7th Cir. 1987). See also Lewis v. Casey, 511 U.S. 1066, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). In the instant case, the plaintiff has wholly failed to assert that he sustained any legal prejudice as a result of the defendants' conduct. For example, he has made no allegation that he has missed any deadlines in pending court proceedings, or has otherwise been prevented from asserting non-frivolous legal claims before any tribunal. Accordingly, he has failed to show any prejudice resulting from the defendants' conduct sufficient to support a claim under § 1983.

Turning to the plaintiff's claim that the defendants were deliberately indifferent to his serious medical needs when they refused him a shower after spraying him with irritant spray, refused him his prescribed eye drops, refused his request to be seen by a medical officer, and confiscated the eye drops located in his cell, the Court

concludes that summary judgment should be granted in favor of the defendants in connection with this claim.[5]  Specifically, the defendants have come forward with affidavits attesting that defendant Hebert was not even present on the date of the incident, that defendant Hooker offered the plaintiff a shower after the use of irritant spray on November 6, 2008 (which the plaintiff refused), that the plaintiff was not denied his eye drops on that date, and that no order was issued directing that the plaintiff not be seen by a medical officer.  In fact, as to medical treatment, defendant Hooker attests that he personally observed the plaintiff being attended by a medical officer after the incident of November 6, 2008, and he has produced a medical record reflecting that the plaintiff was seen by a medical officer at approximately 1:50 p.m. on that date.[6]  In contrast, the plaintiff's Complaint is neither

---

[5] To prevail on an Eighth Amendment claim of improper or inadequate medical care, a prisoner must show that care was denied and that the denial constituted "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251, (1976); Johnson v. Treen, 759 F.2d 1236 (5th Cir. 1985).  Whether the plaintiff received the treatment that he believes he should have is not the issue.  Estelle v. Gamble, supra; Woodall v. Foti, 648 F.2d 268 (5th Cir. 1981).  Nor do negligence, neglect, medical malpractice or unsuccessful medical treatment give rise to a § 1983 cause of action.  Varnado v. Lynaugh, 920 F.2d 320 (5th Cir. 1991); Johnson v. Treen, supra. Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). As stated in Farmer, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and  he must also draw the inference." Id.  A delay in providing medical care is not a violation of this constitutional right unless it results in substantial harm. Mendoza v. Lynaugh, 989 F.2d 191 (5th Cir. 1993).

[6] The Court further notes that the courts have held that a failure to permit an inmate to shower on a single occasion is not the type of offense which presents a substantial risk of serious harm.  See, e.g., Roach v. Caddo Parish Sheriff's Dept., 2010 WL 420068 (W.D. La., Jan. 29, 2010); Dufrene v. Tuner, 2006 WL 2620091 (W.D. La., Aug. 14, 2006).

notarized nor sworn under penalty of perjury, and the plaintiff has neither opposed the defendants' motion nor presented any evidence disputing the defendants' assertions. Accordingly, it appears that the defendants have produce un-refuted evidence reflecting that neither of them were involved in conduct which may be interpreted as having been deliberately indifferent to the plaintiff's serious medical needs on November 6, 2008.

In the context of a motion for summary judgment, it is well-settled that a plaintiff may not rest upon mere allegations or assertions contained in his unsworn Complaint in opposing such a motion. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In order to meet his burden of proof, the party opposing a motion for summary judgment "may not sit on its hands, complacently relying" on the pleadings. <u>Weyant v. Acceptance Insurance Co.</u>, 917 F.2d 209 (5th Cir. 1990). He must designate specific evidence in the record of sufficient caliber and quantity to create a genuine issue for trial, or produce supporting evidence on his own behalf. <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 106 S.Ct. 2501, 91 L.Ed.2d 202 (1986); <u>Phillips Oil Company v. OKC Corp.</u>, 812 F.2d 265 (5th Cir. 1987). In the instant case, despite notice and an opportunity to appear, the plaintiff has not come forward with any opposition to the defendants' motion for summary judgment nor to the factual assertions contained therein. Other than the mere allegations of the plaintiff's unsworn Complaint, unsupported by either affidavit(s) or other corroborating evidence, there is nothing before the Court which tends to support his version of events. What is before the Court for consideration is evidence adduced by the defendants, supported by

documentation and bolstered by supporting affidavits, reflecting that the plaintiff was not subjected to deliberate medical indifference on November 6, 2008. Accordingly, based upon the plaintiff's failure in this case to oppose the defendants' motion for summary judgment, his failure to designate specific evidence in the record of sufficient caliber and quantity to create a genuine issue for trial, and his failure to produce supporting evidence on his own behalf, Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2501, 91 L.Ed.2d 202 (1986); Phillips Oil Company v. OKC Corp., 812 F.2d 265 (5th Cir. 1987), the Court concludes that the defendants' motion is well-taken in this regard and that, on the record before the Court, the defendants are entitled to summary judgment as a matter of law on the issue of deliberate medical indifference.

Finally, addressing the plaintiff's claim that the defendants subjected the plaintiff to excessive force on November 6, 2008, by administering irritant spray on two occasions and by allegedly hitting him with an electronic shield, force is excessive and violates the Eighth Amendment of the United States Constitution only if it is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). Further, not every malevolent action by a corrections official gives rise to a federal cause of action. The Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind." Hudson v.

McMillian, supra.  While an inmate-plaintiff need not show a significant injury to prevail on a claim of excessive force, a necessary element of an excessive force claim is proof of some injury resulting from the use of such force.  Knight v. Caldwell, 970 F.2d 1430 (5th Cir. 1992), cert. denied, 507 U.S. 926, 113 S.Ct. 1298, 122 L.Ed.2d 688 (1993).  Factors to be considered in determining whether the use of force has been excessive include the extent of injury sustained, if any, the need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response.  Hudson v. McMillian, supra.

The evidence before the Court does not support the plaintiff's claim and is, in fact, refuted by the affidavits and evidence produced by the defendants.  Specifically, the defendants' unrefuted evidence reflects that defendant Hebert was not present on the date of the incident complained of, and that although defendant Hooker utilized two brief bursts of irritant spray against the plaintiff, this use of force was necessitated by the plaintiff's repeated refusals to obey orders and come to the bars of his cell to be restrained.  Accordingly, although the defendants have not sought summary judgment relative to the plaintiff's claim regarding the use of excessive force – arguably because they did not anticipate the plaintiff's failure to oppose the instant motion – the Court concludes that summary judgment is appropriate in connection with this claim.  In this regard, the Court is authorized to grant summary judgment as to a claim for which judgment has not been requested so long as the record reflects the parties' entitlement to summary judgment and so long as notice is given to the adverse party.  See NL Industries, Inc. v. GHR Energy Corp., 940 F.2d 957 (5th Cir. 1991), cert. denied, 502 U.S.

1032, 112 S.Ct. 873, 116 L.Ed.2d 778 (1992), <u>Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.</u>, 932 F.2d 442 (5th Cir. 1991), <u>Marriott Bros v. Gage</u>, 911 F.2d 1105 (5th Cir. 1990).  Accordingly, in light of the unrefuted evidence reflecting that the defendants are entitled to summary judgment in connection with the plaintiff's claim of excessive force, the plaintiff is hereby placed on notice that, in the absence of his presentation of competent evidence to refute the defendants' assertions within fourteen (14) days after issuance of this Report, summary judgment may be granted in favor of the defendants on this issue.

## RECOMMENDATION

It is recommended that the plaintiff's claims asserted against defendants Katy Ard and Cadet Franklin be dismissed for failure of the plaintiff to serve these defendants within 120 days as mandated by Rule 4(m) of the Federal Rules of Civil Procedure.  It is further recommended that the defendants' motion for partial summary judgment, rec.doc.no. 19, be granted, dismissing the plaintiff's claims asserted against the defendants in their official capacities and dismissing all of the plaintiff's remaining claims except his claim that defendants Joseph Hooker and Gabriel Hebert subjected him to excessive force on November 6, 2008.  It is further recommended that, in the event that the plaintiff does not come forward, within fourteen (14) days of issuance of this

Report, with competent evidence which adequately refutes the defendants' assertions relative to the alleged use of force, summary judgment be granted, <u>sua sponte</u>, in favor of defendants Joseph Hooker and Gabriel Hebert on the issue of excessive force, and that this action be dismissed, with prejudice.

    Signed in chambers in Baton Rouge, Louisiana, September 9, 2010.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**